By the Court.—Freedman, J.
A verdict having been directed for the defendant, all material facts as to which there is a conflict of testimony are to be decided on this appeal in favor of the plaintiff, and all presumptions and inferences which he had a right to ask from the jury, are to be conceded to him.
The question of contributory negligence was decided by the learned judge who presided at the trial, in favor of the plaintiff.
The plea of payment as an entire defense depended upon the sufficiency of the release obtained by the defendant, and as to that the circumstances under which it was obtained, were of such a character, that the question whether or not it had been obtained by undue influence, imposition or fraud, should have been submitted to the jury, provided there was sufficient evidence upon which the jury might have found negligence in the defendant by which the fall of the floor was caused. The most material question, therefore, is whether there was sufficient evidence of negligence for that purpose.
The defendant is a corporation, and as such can only act through agents. But a corporation is liable to an employee for negligence or want of proper care in respect to such acts and duties as it is required to *286 perform as master or principal without regard to the-rank or title of the agent or representative entrusted with the performance. As to such acts, the agent or representative occupies the place of the corporation, and the latter is deemed present, and consequently liable for the manner in which they are performed. If, therefore, there was negligence in ordering the large quantity of oats to be stored on the part of the floor that fell, which were, in fact, stored there, and the storage of which caused the fall of the floor, it was negligence in the corporation, and not merely the negligence of the particular officer or agent who gave the order. Hence the question of the negligence of a co-servant for which the common employer is not liable, is not in the case.
The depot in question was built expressly for defendant’s use, and originally was two stories high, fronting on Sixth avenue, and extending from Forty-third to Forty-fourth street, in the city of Hew York». In about 1873, one and one-half of a story were added for the purpose of storing grain. This addition was-built by Mr. William R. Stewart, whose reputation as a builder was first-class, by days’ work instead of under a contract fixing the price, and under instructions, from the company that it should be built in the best-possible manner. For his services Mr. Stewart received, from the company ten per cent, on the actual cost. The evidence is uncontradicted that the materials used were first-class and that the work as a whole was done-in a first-class manner. Under these circumstances, the company was justified to use the third floor, which fell and injured the plaintiff, for the storage of grain, and the same was so used up to the time of the injury without any indication of weakness having manifested itself. Within twenty minutes of the fall, several officers of the company had been upon and under the-floor in question, and the witnesses on both sides agree *287 that up to the time of the fall there was no indication anywhere of the impending catastrophe.
Consequently, in order to succeed, the plaintiff was-bound to establish either,- that notwithstanding the care taken by the company towards securing proper construction, as stated, there was some defect which caused the injury, of the existence of which the company had notice, or which, by the exercise of ordinary care, could have been discovered in the course of the use, or else that the use of the premises on the particular occasion complained of was so unreasonable under all the circumstances as to evince negligence.
For a mere hidden and internal defect of which the company had no notice, and which could not be discovered by the exercise of ordinary care, all the authorities agree that the defendant is not liable. ¡Now the only evidence of the existence of a defect, if a defect it was, was some evidence given on behalf of the plaintiff to the effect that while the floor in question would safely sustain a weight equally distributed of one hundred and twenty pounds to the superficial foot, there were upright posts under it that would only sustain a weight of eighty-seven and one-third pounds to the superficial foot, and that consequently the posts were weaker than the beams. The capacity of the floor as stated was shown to be entirely independent of the support derived from the posts. The learned counsel for the plaintiff claims, however, that as the strength of the beams would not be brought into service without some deflection, the entire weight rested upon the posts, and that the instant they broke, the weight came upon the beams with a jar, which suddenly deflected and broke them, though, if there had been no supporting posts and the weight had been applied to the beams gradually, the latter might have sustained the weight, suffering, however, a deflection. And in this connection it was further argued that, in *288 asmuch as Mr. Stewart, at the time of the building of the depot and for years thereafter, was a director in defendant’s company, and as .an expert must be presumed to have been cognizant of the defect, his knowledge was equivalent to notice to the company. I propose to deal at once with this question of notice, for if that is determined against the plaintiff, the existence of the defect, if it was one, becomes immaterial.
The general rule undoubtedly is, that notice to the agent is notice to the principal, if the agent came to the knowledge of the fact while he was acting for the principal in the course of the very transaction which became the subject of the suit; for upon general principles of policy it must be taken for granted that the principal knows whatever the agent knows. And in such a pase there is no difference between personal and constructive notice, except in respect to the guilt; for if there were, it would produce great inconvenience, as notice might be avoided in every case by employing an agent. But the ground and reason of the rule is that the agent is substituted for the principal and represents him in the particular transaction. This relation exists only while the agent is acting in the business thus delegated to him, and the rule must be limited to such occasions. In the building of the depot in question, the relation of Stewart to the company was not that of an agent or representative entrusted and charged with the duty of looking after the interests of the company, but that of an independent contractor, and as such he acted under the orders of the president of the company. It was the latter who had to look after the interests of the company. Any mistake made by Stewart in the capacity of contractor in the construction of the building, cannot therefore be held to be notice se to the company. And there being no other evidence upon which the jury could have found that the company knew of the difference in *289 weight-sustaining capacity existing between the beams and the posts, or that the company, in the exercise of ordinary care, could have discovered the existence of such difference, this branch of the case may be dismissed from further consideration.
ÜÑTor was there any evidence upon which the jury could have found negligence in the company in the maintenance of the building. On the contrary, a close examination made immediately after the accident with the view of ascertaining the true cause thereof, failed to disclose that any beam or timber or posts had become rotten or otherwise unsound.
The case, therefore, comes down to the question whether the use of the premises on the particular occasion complained of was so unreasonable under all all the circumstances as to evince negligence.
That the fall was occasioned by overloading, is reasonably certain. But that alone is not enough. To recover, the plaintiff was bound to establish an overloading that was wrongful in a legal sense.
True, the circumstance that the floor fell, if it stood alone and remained wholly unexplained, would make the doctrine of Mullen v. St. John (57 N. Y. 567), be prima facie evidence of negligence. But in the case at bar, the defendant did show, by way of explanation and by uncontradicted testimony, that sufficient care had been taken in the construction and maintenance of the building; that the floor which fell had been specially built for the storage of grain; that it had been used for that purpose for many years without any indication of weakness manifesting itself; that during such use it had always been considered perfectly safe ; and that, in the course of such use, on May 25, 1878, it fell suddenly, and without any premonitory signs of insufficiency. These facts removed the presumption and cast the burden upon plaintiff to show specific acts of negligence in the use.
*290 The floor having been specially built for the storage of grain, as already stated, and the defendant not knowing of any defect in the construction, the defendant, if at any time its business required a heavy stock of grain to be stored, had a right to use the floor for that purpose, and it was not bound to stop at one-half the distance between the floor and the ceiling, nor at three-quarters or seven-eighths of the distance, but had a right to use every available square foot, provided the floor and the building could be reasonably subjected to such a test. Within the limits of such reasonable use, the only limit was the capacity of the floor and building. How then was the defendant to know such capacity % In the case of a ship there is a register showing her tonnage, and if she be loaded beyond her registered capacity, she will sink so low into the water as to plainly indicate her position even to a casual observer. But in the case at bar these external guides were wanting and the defendant did not possess the powers or knowledge of an expert. The defendant, then, not being restricted in any way, was justified in ascertaining the capacity of the floor and building as best it could by actual use in the course of its business. The floor having been expressly built for the storage of grain in connection with such business as herein before stated, and by a builder of such established reputation that he was described as standing at the head of his profession, and who thoroughly understood the wants of the company in that respect, and the company having thus taken all the care it could under the circumstances, it had a right to assume that the floor was strong enough for the exigencies of its business in the storage of grain, and so long as in the course of such use no indications to the contrary appeared, it had a right to act and to continue to act on that assumption. According to the testimony on both sides no indication of danger or insufficiency preceded *291 the fall of the floor, and this fact would seem to be conclusive in favor of the defendant, unless the quantity of oats upon the floor at the time of its fall was of itself sufficient evidence of unreasonable use, and consequently of negligence.
The part of the floor that broke down and on which the oats were stored, was partitioned off. It was eighty-five feet long and twenty-two feet and six inches wide, and located about twenty-five feet north of the southerly side of the building, which side fronted on Forty-third street. If full, the jury might have found that there were eleven thousand bushels of oats upon it, which at thirty-two pounds per bushel weighed three hundred and fifty-two thousand pounds, and this is the extent of plaintiff’s claim. But it evidently was not full. True, the plaintiff testified in a general way that the oats were piled up in the room as high as the ceiling above in some places, and within seven or eight inches in others, and another witness called on behalf of the plaintiff testified that the oats might have been put a foot from the beams. But it also appeared that the room was at most only eight feet high, and that at the time of the fall the plaintiff and two men were on top of the oats, and that three other men were throwing up bags to them. And finally it was shown without contradiction, that the quantity of oats thus put in formed part of a cargo of about thirteen thousand bushels, of which four thousand were sold to the Broadway Railroad Company without having gone into defendant’s depot. Taken together, therefore, and taken in connection with the further circumstance that at the time of the arrival of the said cargo, the defendant’s company was out of oats, and that no witness testified to the presence of any other oats, the evidence would not have warranted a finding of a larger quantity stored than nine thousand bushels.
The only remaining question then is, whether the *292 storage of nine thousand bushels under all the circumstances was in itself unreasonable, and consequently negligent. Upon this point, considerable expert testimony was given on both sides as to the bearing capacity of the floor that fell. The plaintiff’s witnesses testified that the floor was capable of bearing in absolute safety an equally distributed load exercising a pressure of one hundred and twenty pounds upon each superficial foot of the floor, and that with a factor of safety of four, which is the factor of safety generally used for steady weights, four hundred and eighty pounds to the superficial foot were considered the weight required to break the floor down. About an equal number of witnesses called by the defendant gave the safe weight at from one hundred and fifty to one hundred and ninety-seven pounds, and the breaking weight at from six hundred to eight hundred pounds. The weight of nine thousand bushels of oats at thirty-two pounds per bushel, was equal to a weight of one hundred and fifty pounds upon each of the one thousand nine hundred and twelve and one-half superficial feet which the floor of the storeroom contained. According to the defendant’s expert witnesses, this was within the line of absolute safety. According to the plaintiff’s witnesses it was somewhat beyond the line of absolute safety, but yet very far, according to ordinary experience, from the line of actual danger. It is also a conceded fact in the case that before the beams of the floor in question would break, there would be a deflection or sagging down of six or seven inches. Yet the floor suddenly fell without anybody having noticed any premonitory sign of danger, arid the true cause of the fall, beyond the weight of the nine thousand bushels of oats, could not be ascertained with any degree of certainty. In view of all these facts, it is difficult to see how it can be held that the storage of the nine thousand bushels under the circumstances disclosed by *293 the whole ease was in itself such an unreasonable and therefore negligent use of the premises that a prudent man exercising ordinary care and caution would not have been guilty of it under the same circumstances. For, after all, the defendant can be held only to the exercise of ordinary care under all the circumstances, whether the plaintiff was a servant or a stranger who as such had come upon the premises by invitation of the company.
The foregoing examination demonstrates that in every aspect that can be taken of the case, the plaintiff upon whom the burden of proof rested, failed to prove sufficient to constitute negligence in the defendant causing the injury.
The verdict was properly directed, and consequently the exceptions of the plaintiff should be overruled and judgment should be ordered in favor of the defendant on the verdict, with costs.
Sedgwick, Ch. J., concurred.